IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **NORRIS ANDERSON, JR,** : | |
| : | |
| Petitioner, : | |
| : | |
| VS. : | NO. 5:23-CV-00448-TES-CHW |
| : | |
| **DENIS MCDONOUGH,** : | |
| : | |
| Respondent. : | |
| : | |

## RECOMMENDATION OF DISMISSAL

Presently pending before the Court is a petition for writ of mandamus filed by *pro se* Petitioner Norris Anderson, Jr., an inmate presently incarcerated in the Baldwin County Jail. Petitioner has also filed a motion for leave to proceed *in forma pauperis* in this action (ECF No. 2). For the following reasons, Petitioner's motion is **GRANTED,** but it is **RECOMMENDED** that the Petition be **DISMISSED without prejudice.**

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Petitioner seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). A review of Petitioner's submissions demonstrates that he is presently unable to pay the cost of commencing this action. His application to proceed *in forma pauperis* (ECF No. 2) is therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets

are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Petitioner's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.    **Directions to Petitioner's Custodian**

Hereafter, Petitioner will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Petitioner's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Petitioner is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Petitioner's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Petitioner's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Petitioner's trust fund account shall continue until the entire $350.00 has been collected,

notwithstanding the dismissal of Petitioner's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Petitioner's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Petitioner is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Petitioner of any balance due on these payments by any means permitted by law in the event Petitioner is released from custody and fails to remit such payments.  Petitioner's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY SCREENING

## I.    Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when a petitioner is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in

this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. Factual Allegations and Petitioner's Claims

Petitioner has filed a petition for writ of mandamus in this case in which he appears to seek an order directing Respondent, the Secretary of Veterans Affairs ("VA"), to "perform his owed duty to the Petitioner." Pet. 4, ECF No. 1. The petition indicates that

Petitioner was awarded a "Disability Pension check" from the VA in 2012. Pet. 2, ECF No. 1. In 2021, the VA placed Petitioner in the Veterans Fiduciary Program. *Id.* Under this program, Petitioner was assigned an outside fiduciary that would receive Petitioner's disability checks, assist with the payment of Petitioner's expenses, and distribute the remaining funds to Petitioner. *Id.*

Petitioner alleges that VA has assigned him to four different fiduciary entities since 2021, and that each of those entities "purposely withheld" and "wrongfully . . . spent" Petitioner's disability payments "without Petitioner's knowledge or approval." Pet. 2, ECF No. 1. According to Petitioner, his first fiduciary, Quality Taxes, deducted money from Petitioner's check to pay "phone bills that Petitioner did not own nor have." *Id.* Petitioner successfully demanded that this fiduciary be replaced, but Petitioner's "request for an audit so he could prove his complaint was denied by the South Carolina fiduciary hub for the Veteran Administration." *Id.*

Petitioner's second fiduciary, Quest Services, "stole[] money from him by placing money on a debit card they gave him, then diverting half of the money, and withholding whatever amount they saved out of the Petitioner's check every month." Pet. 3, ECF No. 1. Petitioner again successfully requested replacement of this fiduciary, but his request for an audit was denied. *Id.*

Petitioner's third fiduciary, Generational Family Services, "claimed it was still paying a[] landlord that was no longer Petitioner's landlord, and they were paying a phone bill that did not belong to Petitioner," which resulted in the diversion of hundreds of dollars per month from Petitioner. Pet. 3, ECF No. 1. Petitioner again successfully demanded

5

replacement of this fiduciary, but his request for an audit was again denied. *Id.*

Petitioner's present fiduciary, which is "unknown" to Petitioner, "has received money on behalf of Petitioner since May 2023 and has refused all communication with Petitioner, and failed to give Petitioner money[.]" Pet. 3-4, ECF No. 1. Petitioner states "he has gone through the proper channels" to obtain relief in this case, including complaining to "the South Carolina Veteran Fiduciary Hub, Veteran Affairs Pension intake center in Janesville, WI, the Veteran Complaint hot line in Washington D.C., Senator Warnock office, and to the top Veteran Administrator, Secretary of Veteran Affairs, Denis McDonough." *Id.* at 4. Petitioner thus contends "he is forced by way of this writ of mandamus to demand the Secretary of Veteran Affairs to perform his owed duty to the Petitioner." *Id.* It appears this "owed duty" amounts to a return of any funds wrongfully diverted or withheld by his appointed fiduciaries. *Id.* at 5.

As a preliminary matter, the Court must ensure that it has jurisdiction to entertain Petitioner's claims. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts are only permitted to hear cases authorized by the Constitution or the laws of the United States. *Id.* A federal court thus has an obligation to ensure that it has subject matter jurisdiction over each case or controversy that appears before it. *See, e.g., Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1273 (11th Cir. 2010). If, at any time, the court finds "that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Veterans Judicial Review Act ("VJRA") significantly limits the scope of this Court's jurisdiction in cases involving VA benefits. More specifically, the VJRA provides that the Secretary of Veterans Affairs "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). Subject to limited exceptions, the Secretary's decisions under § 511(a) "shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." *Id.* Where the VJRA applies, the district courts are divested of jurisdiction; if the veteran disagrees with the Secretary's decision on any issue within the purview of § 511(a), the veteran's recourse is limited to the "exclusive scheme for the review of claims affecting veteran's benefits." *Andrews v. Sec'y, Dep't of Veterans Affairs*, 845 F. App'x 880, 883 (11th Cir. 2021) (per curiam). *Id.*[1]

The Eleventh Circuit has held that "any and all determinations by the Secretary as to eligibility, entitlement, or the scope of benefits" constitutes "a decision by the Secretary

---

[1] This "exclusive scheme" requires the veteran to:

> (1) file a claim with the VA's regional office; (2) appeal an unfavorable decision to the Board of Veterans Appeals; (3) appeal that decision to the Court of Appeals for Veterans Claims; and, (4) if pure questions of law remain, appeal to the United States Court of Appeals for the Federal Circuit and, ultimately, the Supreme Court.

*Henderson v. United States*, 612 F. App'x 578, 579 (11th Cir. 2015) (per curiam). Thus, "judicial review of a particular application of the law made by the Secretary with respect to a veteran's entitlement to benefits may be had only by appealing to the Board, then to the Court of Veterans Appeals, the Federal Circuit Court of Appeals and the Supreme Court." *Hall v. U.S. Dep't Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996).

under a law that affects the provision of benefits" under § 511(a). *Smith v. United States*, 7 F.4th 963, 985 (11th Cir. 2021). And, while the substantive decision to grant or deny benefits "is unquestionably shielded from judicial review by § 511(a), . . . the VJRA also precludes judicial review of 'any decision made by the Secretary in the course of making [a] benefits determination[].'" *Id.* (quoting *Tunac v. United States*, 897 F.3d 1197, 1202 (9th Cir. 2018)); *see also Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1021 (9th Cir. 2012) (en banc) (noting that § 511(a) generally precludes "review of decisions made in the context of an individual veteran's VA benefits proceedings"). For this reason, "courts have consistently held that the [VJRA's] scope extends to constitutional or tort claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction." *Andrews*, 845 F. App'x at 883-84.

Federal law governs the selection and supervision of the VA fiduciaries who manage the benefits of veterans who have been deemed to be incompetent. *See, e.g.,* 38 U.S.C. § 5502 (payments to and supervision of fiduciaries); *id.* § 5507 (inquiry, investigations, and qualification of fiduciaries). Courts throughout the country, including the Eleventh Circuit and the Court of Appeals for Veterans Claims, have therefore concluded that the selection, supervision, and removal of fiduciaries pursuant to §§ 5502 and 5507 are determinations made under laws that affect the provision of benefits and thus implicate § 511(a). *Shorette v. McDonough*, 36 Vet. App. 297, 313 (2023) (holding that claim involving "VA's appointment and removal of a fiduciary" arose "under a law that affects the provision of benefits" for purposes of determining jurisdiction); *Freeman v. Shinseki*, 24 Vet. App. 404, 417 (2011) (per curiam) (holding that "the statutory framework

8

authorizing the Secretary to appoint a fiduciary to handle VA benefits for an incompetent veteran falls within the purview of section 511(a)"); *Andrews*, 845 F. App'x at 883 ("Section 5502, which governs payments to and supervision of fiduciaries, is a law affecting the provision of veterans' benefits."); *Evans v. Greenfield Banking Co.*, 774 F.3d 1117, 1124 (7th Cir. 2014) (holding that court lacked jurisdiction over a complaint that amounted to "a challenge to a federal fiduciary appointment and to veteran benefits distribution"); *Henderson v. United States*, Civil Action No. 1:14-CV-0549-AT, 2014 WL 11456277, at *4 (N.D. Ga. July 31, 2014) (collecting cases and finding that court did not have subject matter jurisdiction over claim alleging that department of Veterans Affairs negligently distributed veteran's benefits to improper fiduciary), *aff'd* 612 F. App'x 578 (11th Cir. 2015) (per curiam).

This case centers on Petitioner's allegations that his VA-appointed fiduciaries misappropriated his benefits, and the relief Petitioner seeks is the restoration of those allegedly misappropriated benefits. To resolve Petitioner's claims in his favor, this Court would have to inquire into whether the VA acted properly in appointing, removing, and supervising Petitioner's fiduciaries; it also appears Petitioner may want this Court to second-guess the VA's decisions to deny Petitioner's requests for audits and/or the repayment of misappropriated benefits. As described above, these are matters that arise under laws that affect the provision of VA benefits, and Petitioner's claims thus necessarily implicate § 511(a). *See, e.g., Henderson*, 2014 WL 11456277, at *6 (finding that claim would implicate § 511(a) where it "solely seeks to recover retroactive benefits previously awarded in effect to [fiduciary]"); *Andrews*, 845 F. App'x at 884 (holding that § 511(a)

9

prohibited court from exercising jurisdiction over plaintiffs' claims that VA secretary negligently allowed fiduciary to receive payments in excess of statutorily prescribed fee because claims would require the court "to review VA decisions that affect the provision of benefits"). This Court therefore lacks jurisdiction to hear Petitioner's claims, and the Petition must be dismissed. This is not to say that Petitioner has no recourse; Petitioner may be able to bring his claims before the proper tribunal.[2] Petitioner simply cannot raise his claims in this Court.

### III.     Conclusion

For the foregoing reasons, Petitioner's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, but it is **RECOMMENDED** that his Petition be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A and § 1915(e).

---

[2] What constitutes the proper tribunal is not entirely clear from the Petition. If Petitioner is stating that he has not received a response from the Secretary despite properly filing a request to have his claims adjudicated, then filing a petition for writ of mandamus may be appropriate, although such petition would likely be filed with the United States Court of Appeals for Veterans Claims (the "Veterans Court"). *See, e.g., Mimms v. Shinseki*, No. 12-2651, 2013 WL 2629248, at *1 (Vet. Ct. App. June 12, 2013) (ordering Secretary to respond to petition for mandamus that, among other things, would compel VA to investigate misuse claims and return any misappropriated funds to petitioner); *see also Shorette*, 36 Vet. App. at 314 (rejecting petitioner's request for mandamus "to compel VA to address her repeated complaints that the veteran's current fiduciary is violating the July 2010 fiduciary agreement . . . and to compel VA to release the withheld funds" because petitioner had not alleged that she had submitted a misuse report to the fiduciary hub or demonstrated that a decision addressing her allegations of misuse would be appealable to the Veterans Court); *Mokal v. Derwinski*, 1 Vet. App. 12, 13 (1990) (entertaining a petition for writ of mandamus that would compel Regional Office to issue a Statement of the Case so petitioner could appeal to Board of Veterans Appeals). Otherwise, it appears Petitioner must initiate the VA's administrative process by filing a claim for adjudication with his regional office or pursuing an appeal of any decision he has already received, *see* n.1, *supra*.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 18th day of January, 2024.

        s/ Charles H. Weigle
        Charles H. Weigle
        United States Magistrate Judge